IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAQUEL ANN SERAFIN, | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-1817 |
| | : | |
| MONTGOMERY CO., PA OFFICE OF | : | |
| CHILDREN + YOUTH, *et al.*, | : | |
| *Defendants* | : | |

# MEMORANDUM

QUIÑONES ALEJANDRO, J.　　　　　　　　　　　　　　　　　　　　　JUNE 10, 2019

Plaintiff Raquel Ann Serafin, who is representing herself (proceeding *pro se*) has filed this civil action pursuant to 42 U.S.C. § 1983 against the Montgomery County Office of Children and Youth ("OCY"), several employees of that agency, and a state court judge, based on proceedings in state court that resulted in her minor daughter, B.S., being removed from her custody. She has also filed a Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 6). For the following reasons, the Court will grant Serafin leave to proceed *in forma pauperis* and dismiss her Complaint with leave to amend.

I.　　FACTS

The manner in which Serafin's Complaint is pled is somewhat confusing. However, reading the Complaint in its entirety along with the attached exhibits, it is apparent that she is primarily challenging proceedings that led to the removal of her daughter from her custody. Serafin alleges that on September 28, 2017 she was "forced to sign an agreement [with] OCY's

1

Craig Chwal to allow OCY [to] offer [her] services against [her] will." (Compl. at 4.)[1] Serafin also alleges that Jen Bell, an employee of OCY, interrupted B.S.'s "medical observation to determine acid reflux," and forced Serafin to get a mental health examination on October 12, 2017 while her daughter was on the pediatric unit. (*Id.*)

Serafin also alleges that on October 13, 2017, Bell "wrongfully removed [B.S.] from her medical observation [and] from [Serafin]." (*Id.*) She appears to be alleging that Bell violated her due process rights by seeking and obtaining an emergency protective order for B.S. without filing a dependency petition, without Serafin having been present at a hearing, and based on false allegations. (*Id.*) Serafin suggests the order issued by the state court was improper because it was a "blanket" court order. (*Id.* at 5.) Serafin also appears to allege that, as a result of Bell's intervention, B.S. was given formula that caused her to break out in hives and miss a doctor's appointment for her two-month vaccinations. As relief, Serafin seeks the return of custody of her daughter, damages for pain and suffering, and reimbursement for attorney's fees she spent in connection with B.S.'s case. (*Id.* at 6.)

Exhibits attached to the Complaint provide additional context to Serafin's claims.[2] The exhibits reflect that on October 11, 2017, when B.S. was two-months old, Serafin brought her to the hospital for abnormal breathing. (*Id.* at 14.) Upon review, hospital staff learned that B.S. visited the emergency room four times in the prior two-week period. (*Id.* at 15.) The records for the October 11th visit reflect that Serafin was "extremely anxious" and reported that she "does not feel safe for herself or her baby living at home with her father because she thinks he could potentially abuse the baby." (*Id.*) There were no visual signs of abuse on B.S., but she had lost

---

[1]     The Court adopts the pagination assigned to the Complaint by the CM-ECF system.
[2]     Serafin submitted a separate filing after her initial Complaint, which was docketed as "Exhibits." (ECF No. 4.) That filing essentially duplicates the allegations in Serafin's initial Complaint.

2

weight. The medical record also indicates that Serafin reported to hospital workers that child protective services was aware of issues in the home. According to a subsequent court document, "[h]ospital staff found [Serafin's] condition so concerning they refused to allow [B.S.] to be released with [her]." (*Id.* at 19.)

It appears that as a result of that hospital visit, Bell filed an *ex parte* petition on behalf of OCY seeking the removal of B.S. from Serafin's custody. On October 13, 2017, Judge Wendy Demchick-Alloy of the Juvenile Division of the Montgomery County Court of Common Pleas issued an order for emergency protective custody authorizing OCY to take B.S. into its custody. Per the Judge's order, OCY alleged that Serafin had "severe mental health issues," brought B.S. to the emergency room four times based on delusions or fabricated issues and was observed to have "erratic behaviors regarding the care of [B.S.]." (*Id.* at 18.) Judge Demchick-Alloy concluded that "[d]ue to [Serafin's] inability to properly care for [B.S.], [Serafin's] mental health, and concerns for domestic violence in the home, it is in the best interest of [B.S.] to be placed in the legal and physical custody of [OCY]." (*Id.* at 19.)

B.S. was thereafter placed into foster care. A hearing was held on October 24, 2017 after which B.S. remained in OCY custody. (*Id.* at 35.) Attachments to the Complaint reflect that B.S.'s foster mother took B.S. to the doctor for skin and eating issues.

OCY subsequently moved to suspend Serafin's visitation with B.S. following a July 12, 2018 visit. According to OCY's motion, which was filed by Assistant County Solicitor Alisa Levine, security intervened during the visit after the OCY caseworker was informed "that [Serafin] changed [B.S.'s] diaper twice within a 20 minute period and [Serafin] was stating that [B.S.'s] vagina had been tampered with." (*Id.* at 35.) According to the motion, the caseworker informed Serafin that she should call the police if she believed her daughter to be the victim of a crime, and

Serafin contacted the police, who intervened and instructed Serafin to leave the building. (*Id.*) OCY alleged that the issues necessitating B.S.'s removal from Serafin's custody still existed and asked the judge to suspend visitation because of an ongoing criminal investigation into Serafin. (*Id.* at 36.) Judge Demchick-Alloy granted that motion on July 24, 2018. (*Id.* at 34.) Serafin, through counsel, moved for reconsideration based on her contention that OCY made false statements to the court and failed to provide video evidence of the July 12th visit. (*Id.* at 27.) It appears that her motion was unsuccessful, that she appealed, and that her appeal is still pending. (*Id.* at 40-41.)

In the meantime, the Pennsylvania Department of Human Services investigated a complaint of abuse as to B.S. (presumably against Serafin) and concluded the complaint was unfounded. (*Id.* at 38.) Serafin alleges that OCY "is required to meet with you [and] your children every 30 days" but that she has not "seen the C.W. Nashwick since September of 2018" and her last permanency review hearing was on August 14, 2018. (*Id.* at 8.)

## II. STANDARD OF REVIEW

The Court will grant Serafin leave to proceed *in forma pauperis* because it appears that she is not capable of paying the fees to commence this civil action. Accordingly, Serafin's Complaint is subject to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* As Serafin is

proceeding *pro se*, the Court construes her allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Claims Brought on B.S.'s Behalf

While not clear, it appears that Serafin may be attempting to assert claims on behalf of B.S. in connection with the medical decisions made by her foster mother or OCY case workers—Bell in particular—while B.S. was not in Serafin's custody. Serafin, however, lacks standing to pursue claims on behalf of B.S. and, even if B.S. was a party to this case, Serafin would not be able to represent her because a non-attorney proceeding *pro se* may not represent others in federal court. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a pro se litigant who is not an attorney may not pursue claims on behalf of anyone other than himself including his child). The Court will therefore dismiss without prejudice any claims raised on behalf of B.S. to the extent Serafin sought to raise any such claims.

### B. *Rooker-Feldman* Doctrine

Pursuant to the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). Based on that principle, the *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 166 (quotations omitted). "[T]here are four requirements that must be met for the *Rooker–*

5

*Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id.* at 166.

Serafin is, at least in part, asking this Court to review and vacate an unfavorable judgment or judgments issued by the state court depriving her of custody and visitation on the basis that the judgements are improper "blanket" orders based on false information that were issued without providing her due process. Serafin also seeks relief that would require review and rejection of the state court's rulings depriving her of custody of and visitation with B.S. To the extent Serafin's claims are based on those allegations, the Court lacks jurisdiction to entertain those claims. *See id.* at 167 (explaining that a father's suit in federal court "for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent" falls within the *Rooker Feldman* doctrine (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005))); *see also Lyman v. Philadelphia Court of Common Pleas Domestic Relations Div.*, 751 F. App'x 174, 175 (3d Cir. 2018) (per curiam) (affirming dismissal of civil rights case pursuant to *Rooker-Feldman* where plaintiff "complain[ed] of injuries caused by the state court judgments, namely, that the October 29, 2014, enforcement order made no finding regarding his present ability to comply with the support order or the purge amount, and that the civil contempt proceedings took place without provision of counsel for him" (internal quotations and alterations omitted)); *Lane v. New Jersey*, 725 F. App'x 185, 188 (3d Cir. 2018) (per curiam) ("Lane was clearly complaining of the injuries caused by the judgment—he directly challenged the provision that he not be allowed unsupervised visits with his children, and he was explicitly asking the District Court to overturn that portion of the ruling.").

## C. Claims Against Judge Demchick-Alloy

The Court understands Serafin's claims against Judge Demchick-Alloy to be based on the orders and rulings that the Judge issued in B.S.'s case. However, judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). As Judge Demchick-Alloy issued the orders in question in her judicial capacity while presiding over B.S.'s case, judicial immunity precludes Serafin's claims against her. The Court will dismiss Serafin's claims against Judge Demchick-Alloy with prejudice on that basis.

## D. Claims Against OCY

To the extent Serafin is asserting § 1983 claims within the Court's jurisdiction—*i.e.*, claims that are not barred by the *Rooker-Feldman* doctrine—she has failed to state a claim for relief against OCY. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Serafin cannot state a § 1983 claim against OCY because "it is not a separate legal entity [from the county] that is independently subject to suit." *K.S.S. v. Montgomery Cty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 395 (E.D. Pa. 2012)

Even if Serafin had named Montgomery County as a defendant, her claims for municipal liability fail. To state a § 1983 claim against a municipality, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.

7

*McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). Here, Serafin has not identified a policy or custom of Montgomery County or OCY led to the alleged violation of her constitutional rights, which is fatal to her claims. *See B.S. v. Somerset Cty.,* 704 F.3d 250, 274 (3d Cir. 2013) ("With respect to municipalities such as the County, [the] inquiry turns on whether the due process violation was a result of the County's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"). Accordingly, the Court will dismiss any claims for municipal liability.

### E. Claims Against Bell and Levine

The Court understands Serafin's claims against Bell to be based predominately on Bell's petitioning the state court for removal of B.S. from Serafin's care following B.S.'s October 11, 2017 visit to the emergency room. "[C]hild welfare workers are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." *Hughes v. Long,* 242 F.3d 121, 125 (3d Cir. 2001) (citing *Ernst v. Child & Youth Servs. of Chester Cty.,* 108 F.3d 486 (3d Cir. 1997)). The same type of immunity applies where child welfare workers act as the government's advocate in formulating and presenting recommendations to a court in support of a request for a judicial order related to child custody even when no dependency petition is filed. *B.S.,* 704 F.3d at 265. Here, Bell is entitled to absolute immunity for her conduct in making recommendations to the state court related to B.S.'s condition and petitioning the state court for an order concerning the custody of B.S. *See id.* at 266 (absolute immunity barred procedural due process claims against child welfare workers where "Eller, on behalf of the County and under Barth's supervision, recommended that the court issue an order depriving Mother of custody of Daughter"). Similarly, if Serafin's claims against Levine are based on petitions or other documents she filed in state court in B.S.'s case as OCY's attorney—which

8

is the only basis the Court can discern for Serafin's claims against Levine—Levine is also entitled to absolute immunity. *See Ernst*, 108 F.3d at 504 (finding that attorney was entitled to absolute immunity for claims based on acts taken "while representing CYS in connection with . . . dependency proceedings").

To the extent Serafin is bringing substantive due process claims against Bell for her acts prior to seeking state court intervention, Serafin has not alleged sufficient facts to state a claim. To support a substantive due process claim, a child welfare worker's decision-making must be so clearly arbitrary that it shocks the conscience. *Miller v. City of Philadelphia*, 174 F.3d 368, 376 (3d Cir. 1999). Serafin alleges that Bell "wrongfully removed" B.S. and interrupted B.S.'s medical evaluation. However, records attached to her Complaint indicate that this was B.S.'s fourth visit to the emergency room, hospital workers were reluctant to allow B.S. to go home with Serafin based on Serafin's behavior and mental state, and Serafin reported concerns about abuse in the home. Reading the Complaint and exhibits in their entirety, Serafin has not alleged facts to plausibly suggest that Bell acted in a conscience shocking manner, even if she acted improperly or incorrectly.

### F. Claims Against Remaining OCY Defendants

Serafin has also failed to state a claim against the remaining OCY defendants named in the Complaint. "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy,

9

practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "[T]he level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Id.* at 319.

Here, Serafin has not included any allegations at all against Allison Karpowich, Kerry Greene, Lauri O'Connor, Liz Socki, and Joanne Cianciulli, all of whom are identified as OCY supervisors or administrators. Accordingly, she has not stated a claim against those Defendants. Furthermore, to the extent Serafin is seeking to hold those individuals liable based solely on the acts of their subordinates, her claims fail.

Serafin has also failed to plead sufficient allegations to support a plausible claim that the remaining Defendants, Craig Chwal and Katelyn Nashwick, violated her rights. The only allegation that appears to pertain to Chwal is Serafin's allegation that on September 28, 2017 she was "forced to sign an agreement [with] OCY's Craig Chwal to allow OCY [to] offer [her] services against [her] will." (Compl. at 4.) The only allegation that appears to pertain to Nashwick is Serafin's allegation that Serafin alleges that OCY "is required to meet with you [and] your children every 30 days" but that she has not seen caseworker Nashwick since September of 2018 and her last permanency review hearing was on August 14, 2018. (*Id.* at 8.) These allegations suggest that Chwal and Nashwick were, at some point, involved in B.S.'s case and interacted with Serafin on that basis. But Serafin has not stated what they did or did not do that could plausible support a constitutional violation. Accordingly, the claims fail as pled.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Serafin leave to proceed *in forma pauperis* and dismiss her Complaint. This dismissal will be without prejudice to Serafin's right to file an amended complaint in the event she can cure the defects noted above. Any amended complaint should not raise claims challenging the state court's judgment or claims that are precluded by absolute immunity as discussed above. An appropriate Order follows.