**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAQUEL ANN SERAFIN,** | : | |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 19-CV-1817** |
| | : | |
| **MONTGOMERY CO., PA OFFICE OF** | : | |
| **CHILDREN + YOUTH,** *et al.*, | : | |
| *Defendants* | : | |

# M E M O R A N D U M

**QUIÑONES ALEJANDRO, J.**                                                      **JULY 29, 2019**

Currently before the Court is Plaintiff Raquel Ann Serafin's ("Serafin") *pro se* Amended Complaint filed pursuant to 42 U.S.C. § 1983, against the Montgomery County Office of Children and Youth ("OCY") and several employees of that agency, based on proceedings in state court that resulted in her minor daughter, B.S., being removed from her custody. For the reasons set forth, Serafin's Amended Complaint is dismissed for failure to state a claim.[1]

## I.       FACTS AND PROCEDURAL HISTORY

As explained in the Court's prior Memorandum, (*see* ECF No. 7), which addressed Serafin's initial complaint, this Court understood Serafin's Complaint and exhibits to challenge proceedings that led to the removal of her daughter from her custody. The initial complaint named the following Defendants: (1) OCY; (2) OCY case worker Craig Chwal; (3) OCY caseworker Jen Bell; (4) OCY case worker Katelyn Nashwick; (5) OCY supervisor Allison Karpowich; (6) OCY supervisor Kerry Greene; (7) OCY administrator Laurie O'Connor; (8) OCY administrator Liz

---

[1]       Serafin also filed a motion for leave to proceed *in forma pauperis*. (ECF No. 9.) As Serafin has already been granted leave to proceed *in forma pauperis* in this matter, (*see* ECF No. 8), said Motion is denied, as unnecessary.

Socki; (9) OCY supervisor Joanne Cianciulli; (10) OCY Solicitor Alisa Levine; and (11) Judge Wendy Demchick-Alloy. The facts therein will be recounted because they provide context to Serafin's Amended Complaint, which is somewhat brief. Accordingly, Serafin alleged that on September 28, 2017, she was "forced to sign an agreement [with] OCY's Craig Chwal to allow OCY [to] offer [her] services against [her] will." (Compl. at 4.)[2] Serafin also alleged that Jen Bell, an employee of OCY, interrupted B.S.'s "medical observation to determine acid reflux," and forced Serafin to get a mental health examination on October 12, 2017, while her daughter was on the pediatric unit. (*Id.*)

Serafin further alleged that on October 13, 2017, Bell "wrongfully removed [B.S.] from her medical observation [and] from [Serafin]." (*Id.*) Serafin appeared to be alleging that Bell violated her due process rights by seeking and obtaining an emergency protective order for B.S. without filing a dependency petition or her having been present at a hearing and based on false allegations. (*Id.*) Serafin suggested that the order issued by the state court was improper because it was a "blanket" court order. (*Id.* at 5.) Serafin also appeared to allege that as a result of Bell's intervention, B.S. was given formula that caused her to break out in hives and miss a doctor's appointment for her two-month vaccinations. As relief, Serafin sought the return of her daughter, damages for pain and suffering, and reimbursement for attorney's fees she spent in connection with B.S.'s case. (*Id.* at 6.)

Exhibits attached to the complaint provided additional context to Serafin's claims. The exhibits show that on October 11, 2017, when B.S. was two-months old, Serafin brought her to the hospital for abnormal breathing. (*Id.* at 14.) Upon review, hospital staff learned that B.S. visited the emergency room four times in the prior two-week period. (*Id.* at 15.) The records for

---

[2]     The Court adopts the pagination assigned to Serafin's pleadings by the CM-ECF system.

the October 11th visit indicated that Serafin was "extremely anxious" and reported that she "does not feel safe for herself or her baby living at home with her father because she thinks he could potentially abuse the baby." (*Id.*) There were no visual signs of abuse on B.S., except for a weight loss. The medical record also indicated that Serafin reported to hospital workers that child protective services was aware of issues in the home. According to a subsequent court document, "[h]ospital staff found [Serafin's] condition so concerning they refused to allow [B.S.] to be released with [her]." (*Id.* at 19.)

As a result of that hospital visit, Bell filed an *ex parte* petition on behalf of OCY seeking the removal of B.S. from Serafin's custody. On October 13, 2017, Judge Wendy Demchick-Alloy of the Juvenile Division of the Montgomery County Court of Common Pleas issued an order for emergency protective custody authorizing OCY to take B.S. into its custody. Pursuant to the Judge's order, OCY alleged that Serafin had "severe mental health issues," brought B.S. to the emergency room four times based on delusions or fabricated issues and was observed to have "erratic behaviors regarding the care of [B.S.]." (*Id.* at 18.) Judge Demchick-Alloy concluded that "[d]ue to [Serafin's] inability to properly care for [B.S.], [Serafin's] mental health, and concerns for domestic violence in the home, it is in the best interest of [B.S.] to be placed in the legal and physical custody of [OCY]." (*Id.* at 19.)

B.S. was thereafter placed into foster care. A hearing was held on October 24, 2017 after which B.S. remained in OCY custody. (*Id.* at 35.) Attachments to the complaint indicated that B.S.'s foster mother took B.S. to the doctor for skin and eating issues.

OCY subsequently moved to suspend Serafin's visitation with B.S. following a July 12, 2018 visit. According to OCY's motion, filed by Assistant County Solicitor Alisa Levine, security intervened during the visit after the OCY caseworker was informed "that [Serafin] changed

[B.S.'s] diaper twice within a 20-minute period and [Serafin] was stating that [B.S.'s] vagina had been tampered with." (*Id.* at 35.) According to the motion, the caseworker informed Serafin that she should call the police if she believed her daughter to be the victim of a crime, and Serafin contacted the police, who intervened and instructed Serafin to leave the building. (*Id.*) OCY alleged that the issues necessitating B.S.'s removal from Serafin's custody still existed and asked the judge to suspend visitation because of an ongoing criminal investigation into Serafin. (*Id.* at 36.) Judge Demchick-Alloy granted that motion on July 24, 2018. (*Id.* at 34.) Serafin, through counsel, moved for reconsideration based on her contention that OCY made false statements to the court and failed to provide video evidence of the July 12th visit. (*Id.* at 27.) It appeared that her motion was unsuccessful which she appealed, and that her appeal is pending. (*Id.* at 40-41.)

In the meantime, the Pennsylvania Department of Human Services investigated a complaint of abuse as to B.S. (presumably against Serafin) and concluded the complaint was unfounded. (*Id.* at 38.) Serafin alleged that OCY "is required to meet with you [and] your children every 30 days" but that she has not "seen the C.W. Nashwick since September of 2018" and her last permanency review hearing was on August 14, 2018. (*Id.* at 8.)

This Court granted Serafin leave to proceed *in forma pauperis* and dismissed her complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, this Court dismissed any claims Serafin intended to bring on behalf of B.S. for lack of standing; explained that the *Rooker-Feldman* doctrine deprived it of jurisdiction to review and vacate any unfavorable state court judgments related to custody of B.S.; concluded that any claims against Judge Demchick-Alloy were barred by absolute judicial immunity; and further concluded that Serafin failed to state a claim against OCY because it was not a proper entity subject to suit under § 1983, and she had not alleged a basis for municipal liability. This Court also concluded that Serafin

failed to state a claim against any OCY employees. Serafin's claims against Bell and Levine were barred by absolute immunity afforded to child welfare workers and attorneys for child welfare agencies for preparing, initiating, and prosecuting dependency proceedings. Additionally, for claims that were not barred by immunity, Serafin failed to allege conscience shocking conduct that amounted to a plausible due process claim. And for most of the OCY employees named as Defendants, Serafin failed to articulate a basis for individual or supervisory liability by providing sufficient facts to explain how they were involved in the violation of her constitutional rights.

Serafin was allowed leave to file an amended complaint in the event she could state a plausible claim for relief and instructed not to reassert claims challenging the state court's judgment or seeking relief from an immune Defendant. Serafin filed an Amended Complaint naming the following Defendants: (1) OCY; (2) OCY caseworker Craig Chwal (intake); (3) OCY caseworker Jen Bell (intake); (4) OCY caseworker Katelyn Nashwick; (5) OCY supervisor Allison Karpowich; (6) OCY supervisor Kerry Greene; (7) OCY supervisor Joanne Cianciulli (intake); (8) OCY administrator Liz Socki (intake); (9) OCY administrator Laurie O'Conner; and (10) OCY solicitor Alisa Levine. She indicates that she is asserting claims under 42 U.S.C. § 1983 in connection with the removal of B.S. from her care based on what she claims are false allegations.

In the Amended Complaint, Serafin alleges that Chwal "forced and threatened [her] to sign documents without a court order." (Am. Compl. at 3.) She claims that Bell "opened the case off false allegations"—*i.e.*, that Serafin suffered from mental health issues—and wrongfully removed her daughter from her care. (*Id.*) Serafin alleges that Nashwick "was still in training and did not review the outcome of the Childline Report," which she notes "came back invalid and unfounded." (*Id.*) Serafin also alleges that Nashwick did not testify truthfully in state court. Serafin does not

discuss the conduct of any other Defendants except to suggest that all the allegations apply to Karpowich.  As relief, Serafin seeks immediate custody of B.S. and monetary damages.

## II.   STANDARD OF REVIEW

As Serafin is proceeding *in forma pauperis*, her Amended Complaint is subject to the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii), which requires a court to dismiss an amended complaint if it fails to state a claim.   Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  This rule requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   "[M]ere conclusory statements do not suffice." *Id.*  As Serafin is proceeding *pro se*, this Court construes her allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION[3]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[3]   The Amended Compliant, in contrast to the initial complaint, focuses more on OCY workers' conduct than the state court's judgment.  However, to the extent the Amended Complaint can be understood to be seeking review and rejection of the state court's orders related to custody and visitation, the Court lacks jurisdiction over those claims and related requests for relief pursuant to the *Rooker-Feldman* doctrine. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (the *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

For the following reasons, the Amended Complaint fails to state a claim upon which Serafin may proceed.

### A.  Claims Against OCY

Serafin has again failed to state a claim for relief against OCY because under § 1983 "it is not a separate legal entity [from the county] that is independently subject to suit". *K.S.S. v. Montgomery Cty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 395 (E.D. Pa. 2012). However, even if Serafin had named Montgomery County as a defendant, her claims for municipal liability fail.

To state a § 1983 claim against a municipality, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). The plaintiff "must identify [the] custom or policy and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, --- F.3d ---, No. 16-4351, 2019 WL 2998601, at *8 (3d Cir. July 10, 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Serafin has not identified a policy or custom of Montgomery County or OCY that led to an alleged violation of her constitutional rights nor pled a basis for concluding that municipal failures amounted to deliberate indifference, which is fatal to her claims. *See B.S. v. Somerset Cty.*, 704 F.3d 250, 274 (3d Cir. 2013) ("With respect to municipalities such as the County, [the] inquiry

turns on whether the due process violation was a result of the County's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"). Accordingly, any claims for municipal liability is dismissed.

**B. Claims Against Chwal, Bell, and Nashwick**

"[C]hild welfare workers are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001) (citing *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486 (3d Cir. 1997)). The same type of immunity applies where child welfare workers act as the government's advocate in formulating and presenting recommendations to a court in support of a request for a judicial order related to child custody even when no dependency petition is filed. *B.S.*, 704 F.3d at 265. Similarly, witnesses are entitled to absolute immunity from liability based on testimony given in court. *See Briscoe v. LaHue*, 460 U.S. 325, 341-46 (1983); *see also Hughes*, 242 F.3d at 125 ("Witnesses, including public officials and private citizens, are immune from civil damages based upon their testimony").

To the extent Serafin's claims against Chwal, Bell, and Nashwick are based on their filing of court documents related to the custody and care of B.S., those Defendants are entitled to absolute immunity. They are also entitled so absolute immunity for making recommendations to the state court—even if those recommendations were based on falsehoods or otherwise incorrect—and for testimony given in court proceedings. *See B.S.*, 704 F.3d at 266 (absolute immunity barred procedural due process claims against child welfare workers where "Eller, on behalf of the County and under Barth's supervision, recommended that the court issue an order depriving Mother of custody of Daughter").

To the extent Serafin is bringing substantive due process claims against these Defendants that are not barred by absolute immunity, she has not alleged conduct so arbitrary that it shocks the conscience. *See Miller v. City of Philadelphia*, 174 F.3d 368, 376 (3d Cir. 1999). Serafin's allegations do not support a plausible claim that the Defendants acted in a conscience-shocking manner, even if they made mistakes or otherwise acted incorrectly. Serafin alleges that Chwal forced and threatened her by having her sign documents. However, this allegation is conclusory and does not plausibly establish a constitutional violation. She also accuses Bell of opening a case against her based on a falsehood, *i.e.*, that she suffers from mental health issues. Even if this allegation is not barred by absolute immunity, Serafin does not address the other circumstances that led to the removal of B.S. from her care. Serafin also alleges that Nashwick did not review the outcome of the Childline Report. However, it is not clear how that gives rise to a claim against Nashwick, especially since it appears that the thrust of Serafin's claims against Nashwick is her testimony in court, which is barred by immunity principles as discussed above. In sum, Serafin has not alleged a sufficient factual basis for a plausible substantive due process claim against these Defendants that is not barred by immunity principles.

### C. Claims Against Remaining OCY Defendants

Serafin has also failed to state a claim against the remaining OCY defendants named in the Amended Complaint. "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy,

practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "[T]he level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Id.* at 319.

Serafin has not included any allegations against Kerry Greene, Joanne Cianciulli, Liz Socki, and Laurie O'Conner, all of whom are identified as OCY supervisors or administrators. Serafin has also failed to include any allegations against Alisa Levine, who is identified as the OCY solicitor. Accordingly, Serafin has not stated a claim against those Defendants. Furthermore, to the extent Serafin is seeking to hold those individuals liable based solely on the acts of their subordinates, her claims fail. Similarly, Karpowich is not alleged to have done anything specific and, although Serafin suggests she is liable for the conduct discussed in the Amended Complaint, that allegation is not sufficiently factually specific to give rise to a plausible claim against Karpowich. Indeed, it appears that Serafin may be seeking to hold Karpowich liable based solely on the acts of her subordinates, which is not appropriate.

## IV.    CONCLUSION

For the reasons provided, Serafin's Amended Complaint is dismissed. As Serafin has already been given an opportunity to correct the defects in her initial complaint, and her Amended Complaint suffers from many of the same defects, this Court concludes that further attempts at amendment would be futile. Accordingly, the Amended Complaint is dismissed with prejudice. An appropriate Order follows.